1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9    Arthur L Vitasek,                    No. CV-21-00436-PHX-MTL

10                   Petitioner,          **ORDER**

11   v.

12   David Shinn, et al.,

13                   Respondents.

14

15        In November of 2011, Petitioner Arthur L. Vitasek was convicted of 19 counts of

16   sexual contact with a minor, 3 counts of public indecency to a minor, 3 counts of

17   molestation of a child, 1 count of attempted molestation of a child, and 1 count of

18   continuous sexual abuse of a child. An Arizona court sentenced Vitasek to several

19   aggravated terms of incarceration totaling 199.5 years, followed by 11 consecutive life

20   sentences. Pending before this Court is Vitasek's Petition for Writ of Habeas Corpus (the

21   "Petition") (Doc. 1), Motion for Reconsideration (Doc. 64), Motion for Leave of Court to

22   Amend (Doc. 66), and Motion to Strike (Doc. 68). Magistrate Judge John Z. Boyle issued

23   a Report and Recommendation ("R&R") (Doc. 42) recommending that the Petition be

24   dismissed with prejudice and that a certificate of appealability be denied as to all of

25   Petitioner's claims. (Doc. 42 at 53.) For the following reasons, the Court adopts the R&R's

26   recommendation and dismisses the Petition with prejudice. The Court also discusses and

27   ultimately denies Vitasek's Motion for Reconsideration (Doc. 64), Motion for Leave of

28   Court to Amend (Doc. 66), and Motion to Strike (Doc. 68).

## I.      LEGAL STANDARDS

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations de novo if an objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *see also Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (explaining that a district court "must review de novo the portions of the [Magistrate Judge's] recommendations to which the parties object"); *Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that de novo review of factual and legal issues is required if objections are made, 'but not otherwise.'"). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). General objections are insufficient to trigger a district court's de novo review of a report and recommendation. *Neufeld v. Shinn*, No. CV-20-08155-PCT-JAT, 2021 WL 3046904, at *2 (D. Ariz. July 20, 2021). And the Court need only review specific objections. *Id.* "To be 'specific,' the objection must, with particularity, identify the portions of the proposed findings, recommendations, or report to which it has an objection and the basis for the objection." *Id.* Accordingly, the Court will only conduct a de novo review of those portions of the R&R to which there is a specific objection.

The Court may only grant federal habeas relief on properly exhausted claims. *See, e.g.*, *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To exhaust a claim, a petitioner must fairly present the claim to the state's "highest" court. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). For non-capital cases in Arizona, a habeas petitioner presents his claim to the "highest-court" by presenting it to the Arizona Court of Appeals in his direct appeal, a properly filed state action, or post-conviction relief. *See Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Date v. Schriro*, 619 F. Supp. 2d 736, 762-63 (D. Ariz. 2008). To exhaust a claim, a petitioner must

present to the state courts the substantial equivalent of the claim later presented in federal courts. *Pickard v. Connor*, 404 U.S. 270, 278 (1971); *Libberton v. Ryan*, 583 F.3d 1147, 1164 (9th Cir. 2009). The petitioner must also present the same facts and same legal theory to the state court for proper exhaustion. *See, e.g.*, *Duncan v. Henry*, 513 U.S. 364, 366 (1995).

Where a state court relied on a state procedural rule to deny or dismiss a claim, an express procedural bar prevents a petitioner from raising that claim in federal court. *Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). Similarly, an implied procedural bar prevents a petitioner from raising an unexhausted claim in federal court where a state's procedural rules would make a return to state court futile. *Coleman*, 501 U.S. at 735 n.1; *Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002). To overcome a procedural default, it is the petitioner's burden to establish cause and prejudice for the court to consider an unexhausted claim on its merits. *See Ellis v. Armenakis*, 222 F.3d 627, 632 (9th Cir. 2000). "Cause" may be shown through establishing a legitimate excuse outside of the petitioner's control. *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011). "Prejudice" is actual harm resulting from the constitutional violation. *Id.* To establish prejudice, the petitioner must establish the state court error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* The Court may also consider the merits of a procedurally defaulted claim if the failure to do so will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. But this exception is limited to extraordinary cases where the petitioner asserts actual innocence and establishes "that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

Under 28 U.S.C. § 2254(d)(1), a federal court cannot grant habeas corpus relief to a petitioner on a properly exhausted claim unless the petitioner establishes the state court's decision denying the claim "was contrary to" or an "unreasonable application" of federal law as clearly established in Supreme Court precedent at the time of the state court decision. This standard is "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). It is a

"highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation and internal quotation marks omitted). Federal courts are to also presume that the factual findings of state courts, including state appellate courts, are correct. *See* 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 455 U.S. 591, 593 (1982). In habeas cases when evaluating state court decisions, federal courts look through summary or unexplained higher state court opinion to the last reasoned decision on the claim. *See Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018).

## II.    FACTUAL BACKGROUND

Vitasek generally objects to the R&R's use of the Arizona Court of Appeals' decision to detail the factual background underscoring his conviction and sentencing. (Doc. 61 at 7.) Vitasek argues that the Magistrate Judge assumed the Arizona Court of Appeals' summary was correct when "the complete record provides otherwise." (*Id.*) But absent clear and convincing evidence, the Court presumes that the state court's factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012). And Vitasek has not provided any clear and convincing evidence to conclude otherwise.

Vitasek also provides his own factual background interjected with general objections to the Magistrate Judge's supposed "failure to obtain and view the recordings and the redactions from the recordings to determine if the results of the trial would have been different." (*Id.* at 5.) These objections fail to cite to any specific portion of the R&R and simply allege a general failure to obtain state court records. As such, the Court has no obligation to engage in a de novo review of them. In any event, because Vitasek has failed to rebut the presumption of correctness entitled to state court factual determinations by clear and convincing evidence, the Court adopts the R&R's recitation of the state court's factual background.

1    The Arizona Court of Appeals summarized the facts of the case as follows:

2         In 1999, Vitasek lived in an apartment near Pinnacle Peak
3         where he met 9-year-old brothers C.K. and Ch.K. (and their
          older brother S.K.), whose father lived in the same complex.
4         Vitasek became a father figure to them, and they would often
5         visit him and stay at his apartment overnight. Almost
          immediately, Vitasek began to have sexual contact with the
6         boys. Vitasek masturbated C.K. on several occasions over the
          next two years, and had oral sexual contact with C.K. at least
7         once. Over the same period, Vitasek and Ch.K. masturbated
8         together between 15 and 25 times, while Ch.K. was between 9
          and 11 years old.
9

10        Vitasek then moved to Las Vegas for about two years, where
11        he met M.E.'s mother through work and eventually began to
          sexually abuse M.E. M.E. nevertheless viewed Vitasek as a
12        father figure, and other children would refer to him as M.E.'s
13        dad.

14

15        In the fall of 2003, Vitasek moved back to the Phoenix area
16        with M.E. and M.E.'s mother and sister, and the four lived
          together. Over the next approximately nine months, Vitasek
17        perpetrated multiple sexual acts on 9– and 10–year-old M.E.,
          including simultaneous masturbation, Vitasek masturbating
18        M.E., Vitasek having oral contact with M.E.'s penis, and M.E.
19        penetrating Vitasek's anus with his penis.

20

          During this period from September 2003 to June 2004, Vitasek
21        met other children through M.E., and he began to sexually
22        abuse the other boys as well. Seven-year-old C.A. knew M.E.
          from school, and when C.A. visited M.E. at home, Vitasek
23        attempted to reach up C.A.'s shorts to touch his penis on one
24        occasion and reached under a towel to rub C.A.'s penis another
          time. When 10– or 11–year-old C.S. came over to the house to
25        see M.E., Vitasek had him pull down his pants and proceeded
26        to have oral contact with C.S.'s penis.

27

28        Vitasek and M.E.'s family moved out of the house to separate
          residences in the summer of 2004. In the fall of 2004, Vitasek

continued to visit M.E. and his family at their new home, where he met brothers B.M. (12 years old) and C.M. (11 years old) who lived in the same apartment complex. Vitasek had further sexual contact with the boys at M.E.'s apartment, including masturbating himself in front of M.E. and C.M. and having M.E. put his penis in Vitasek's anus.

Through the fall of 2004, Vitasek also continued to have sexual contact with the boys at his own new apartment/condominium, including oral contact with C.A.'s penis, oral contact with B.M.'s penis, and penile penetration of M.E.'s anus. The sexual conduct continued after Vitasek moved into a different apartment in December 2004, including multiple instances of oral contact with C.A.'s penis (at least once with M.E. present) and an instance in which Vitasek masturbated himself while being anally penetrated by M.E. in mid-January 2005.

In January 2005, C.M. told school officials that M.E.'s "dad" (Vitasek) was a child molester. Investigators interviewed, among others, M.E., Ch.K., C.K., S.K., B.M., C.M., C.A., and C.S. After M.E.'s first interview, M.E.'s mother agreed to a safety plan that included preventing Vitasek from having contact with M.E. The next day, however, M.E.'s mother allowed Vitasek to pick up M.E. and another boy to spend the night. Vitasek learned that the police were looking for him and dropped the other boy off in a public place and, after an Amber Alert issued for M.E., dropped M.E. off with another adult. Meanwhile, Vitasek hurriedly packed some belongings and attempted to sell his car "for really cheap," and he left Phoenix immediately.

Vitasek remained on the run for the next year and a half until he was found living in Texas under an assumed name. In September 2006, a 16–year-old boy in Texas told police that "Rich Loper" had manually touched the boy's penis and later penetrated the boy's anus with his penis. Investigating officers discovered that "Rich Loper" was Vitasek, and he was arrested and returned to Arizona to face criminal charges.

The State charged Vitasek with 3 counts of public sexual indecency to a minor, 3 counts of molestation of a child, 1

count of attempted molestation of a child, 1 count of continuous sexual abuse of a child, and 19 counts of sexual conduct with a minor, with C.S., C.A., B.M., C.M., M.E., Ch.K., C.K., and S.K. as the alleged victims. [n.3: At the State's request during trial, the superior court dismissed with prejudice the four counts (all of which alleged sexual conduct with a minor) in which S.K. was the alleged victim.] At Vitasek's request, the case was designated complex. After a substantial period of pretrial proceedings, Vitasek requested to waive counsel and represent himself. The court, finding that his waiver of the right to counsel was knowing, intelligent, and voluntary, granted Vitasek's request to represent himself, and appointed advisory counsel to assist him. After further, extensive pretrial proceedings (largely involving Vitasek's numerous pretrial motions), the court allowed Vitasek to withdraw his waiver and proceed with retained counsel.

After a 27–day trial, the jury found Vitasek guilty as charged, found each victim of the sexual conduct with a minor counts had been under the age of 12, and further found multiple aggravating factors relating to 12 of the offenses. The court sentenced Vitasek to aggravated terms of imprisonment totaling 199.5 years, to be followed by 11 consecutive life sentences, and further ordered that Vitasek submit to and pay the cost of DNA testing.

(Doc. 1-4, Ex. A, at 5-7; *see* Doc. 10-1, Ex. A, at 3-11; *Id.*, Ex. B, at 12-25.)

The R&R further recounts the procedural history of this case, including the underlying state court proceedings. (Doc. 42 at 3-6.) Neither party has objected to this portion of the R&R and the Court hereby accepts and adopts it.

## III.   THE REPORT AND RECOMMENDATION

Vitasek sets forth twelve grounds for relief in his Petition. As helpfully laid out in the R&R:

> (1)   Sixth Amendment right to counsel during cross-examination (Doc. 1 at 8-12);
>
> (2)   Fourteenth Amendment due process right of "access to the courts" because Arizona Court of Appeals Judge Randall Howe "refused to address GROUND ONE due to his clerk's scanning error" (*id.* at 13-17);

(3)     Sixth Amendment right to confront witnesses when the trial court "changed his ruling" regarding the prosecutor's use of hearsay recordings after all witnesses had testified, been excused, [and were] no longer available for cross-examination on the hearsay evidence" (*id.* at 18-22);

(4)     Fourteenth Amendment right to due process and Sixth Amendment right under the Confrontation Clause because the hearsay recordings "failed to meet Rule 803(5)'s requirements," the trial court "failed to conduct the required hearing," and the Arizona Court of Appeals "applied an unreasonable determination of the facts when evaluating this issue on appeal" (Doc. 1 at 18 to Doc. 1-1 at 4);

(5)     Fourteenth Amendment right to due process and Sixth Amendment right to the effective assistance of counsel because the trial court's "findings on the denial of unchastity [were] unsupported by sufficient evidence in the record because the court . . . refused to conduct a MANDATORY pretrial chastity hearing" and because "counsel failed to ensure the hearing was conducting [sic] prior to trial" (Doc. 1-1 at 5-10);

(6)     Fourteenth Amendment right to due process and Sixth Amendment rights to confront witnesses, compulsory process to present a complete defense, and effective assistance of counsel because the trial court "precluded relevant unchastity evidence of the State's witnesses" (*id.* at 11-15);

(7)     Fourteenth Amendment right to due process because the prosecutor failed to prove every element of the charged crimes beyond a reasonable doubt and, "[t]herefore[,] the Petitioner is innocent and no procedural default can be used to deny habeas corpus relief" (Doc. 1-1 at 16 to Doc. 1-2 at 4);

(8)     Sixth Amendment rights to due process, compulsory process, and confrontation because the trial court "allowed the prosecutor to play the alleged victims['] police interviews to the jury as evidence" and "allowed

1

2

the improper sexual questioning to be redacted" (Doc. 1-2 at 5-9);

3

4

5

6

7

(9)   Fourteenth Amendment right to due process and a fair trial because of the "enormous prosecutorial misconduct which had a substantial and injurious effect or influence on the jury's verdict and infected the integrity of the proceedings" (Doc. 1-2 at 10 to Doc. 1-3 at 1);

8

9

(10)   Fifth Amendment right under the Grand Jury Clause "to be tried on the charges presented within the indictment" (Doc. 1-3 at 2-7);

10

11

12

(11)   Fourteenth Amendment right to due process and Sixth Amendment right to compulsory process because the trial court denied Petitioner's expert witness "due to late disclosure" (*id.* at 8-10); and

13

14

15

16

17

18

(12)   Sixth Amendment right to the effective assistance of counsel on appeal because "counsel filed an *Anders* brief when numerous meritorious appellate issues existed" and Fourteenth Amendment right to due process because the Arizona Court of Appeals "failed to appoint new counsel to represent the Petitioner on those meritorious issues" (*id.* at 11-13).

19

20

21

22

(Doc. 6 at 2-3.) The R&R recommends that this Court deny relief on all claims because each ground and subpart is either non-cognizable, procedurally defaulted, or without merit. (Doc. 42 at 1.) Vitasek filed his objections (Docs. 61, 61-1, 61-2) to which Respondents filed a response (Doc. 65).

23

### A.   Ground One

24

25

26

27

28

In Ground One of his Petition, Vitasek argues that the trial court violated his Sixth Amendment right to counsel and to confront witnesses by allowing his victims' statements in police recordings to be admitted for the truth of the matter asserted. (Doc. 1 at 8-12.) Vitasek objects to the R&R's rejection of his argument that "the trial court assured the parties that the recordings would not be admitted as substantive evidence" as "not

1    supported by the record or [his] prior filings." (Doc. 61 at 11-13.) Vitasek further argues

2    that his trial counsel had no notice that the recordings would be published to the jury as

3    substantive evidence and that the recordings fail to meet the requirements for admission

4    under Arizona Rule of Evidence 803(5). (Doc. 61 at 8-11.)

5         The Arizona Court of Appeals found that the "foundational requirements for

6    admission under Rule 803(5) were met." *State v. Vitasek*, No. 1 CA-CR 12-0050, 2017 WL

7    525963, at *8 (Ariz. Ct. App. Feb. 9, 2017). The court reasoned that although the victims

8    "were able to testify to the offenses in part, they indicated that they could not remember

9    everything, that they remembered better at the time of the pretrial interviews, and that they

10   had been truthful during the interviews." *Id.* The Court finds that this was not contrary to

11   or an unreasonable application of federal law. Arizona Rule of Evidence 803(5), the

12   recorded recollection exception to the rule against hearsay, is identical to Federal Rule of

13   Evidence 803(5). And the admission of prior recorded recollections for the truth of the

14   matter asserted is permissible under clearly established federal law. *See* Fed. R. Evid.

15   803(5); *United States v. Brown*, 800 Fed. App'x 455, 463 (9th Cir. 2020); *Mordick v.

16   Valenzuela*, 780 Fed. App'x 430, 434 (9th Cir. 2019) ("A hearsay exception for recorded

17   recollections is generally recognized and has been described as having long been favored

18   by the federal and practically all the state courts that have had occasion to decide the

19   question.") (internal citation and marks omitted). The Court finds that the Arizona Court

20   of Appeals properly articulated and analyzed the elements of the hearsay exception and

21   applied it to the facts presented.

22        Vitasek's contention that the trial court assured his trial counsel that the recordings

23   would not be admitted for substantive purposes is not supported by the record. On

24   September 28, 2011, during a hearing on the prosecution's motion to admit and publish the

25   recorded interviews of the victims, the trial court deferred ruling on whether the recordings

26   could be admitted as substantive evidence beyond rebutting Vitasek's contentions that the

27   police used improper interview techniques. (Doc 30-10 at 11). The trial court expressly

28   reserved its ruling on whether the recordings could be admitted for substantive purposes,

stating "I don't think I have to rule on this now, really. I try not to get ahead of myself on rulings. Let's see the tapes." (*Id.*) Shortly thereafter, in a written ruling dated October 3, 2011, the trial court found the recorded interviews to be admissible under Arizona Rule of Evidence 803(5). (Doc. 10-5 at 76.) This record belies the claim that the trial court somehow assured or promised Vitasek's trial counsel that these recordings would never be admitted for substantive purposes. Similarly, Vitasek's argument that his trial counsel did not receive notice that the recordings would be admitted as substantive evidence prior to October 27, 2011 is not supported by the record. (Doc. 61 at 15.) As mentioned above, the trial court issued a written ruling admitting the recordings on October 3, 2011 (Doc. 10-5 at 76), and on October 20, 2011 and October 26, 2011, Vitasek's trial counsel objected to the trial court's admission of the recordings (Doc. 31-5 at 174). This record clearly demonstrates that Vitasek's trial counsel had notice that the recordings would be admitted as substantive evidence prior to October 27, 2011.

To the extent that Vitasek makes any specific objection to the R&R on Confrontation Clause grounds, the Court finds that the trial court's admission of the recordings under Rule 803(5) was not clearly contrary to or an unreasonable application of federal law. For one, Federal Rule of Evidence 803(5) does not require further cross-examination of a witness once a statement is properly admitted as a recorded recollection. *See Brown*, 800 Fed. App'x. at 463 ("Nor did admitting that statement violate the Confrontation Clause, because Rule 803(5) does not require further cross-examination of a witness once a statement is properly admitted as a past recollection recorded."). Moreover, the victim witnesses testified at trial, were subject to cross-examination, and could have been recalled during the State's case or called as witnesses during Vitasek's case in chief. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (stating that a "witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination"). Further, while admission under 803(5) does not require prior notice to the opposing party, Vitasek's trial counsel had notice of the fact that the recordings could

1    potentially be used for substantive evidence when the trial court deferred ruling on the issue

2    on September 28, 2011. Therefore, Vitasek's objections to the R&R's analysis of Ground

3    One are overruled.

### B.    Ground Two

5         In Ground Two of his Petition, Vitasek asserts the Arizona Court of Appeals

6    violated his "Fourteenth Amendment Due Process right to access the courts" when it

7    declined to address "Ground One" on post-conviction review. (Doc. 1 at 14.) In his post-

8    conviction Petition for Review to the Arizona Court of Appeals, Vitasek presented the

9    same arguments found in Ground One of his habeas Petition. (Doc. 10-4 at 20.) Again,

10   Vitasek argued that his "counsel was rendered ineffective when the [trial] court changed

11   its ruling on the use of hearsay recordings to prove the truth of the matter after all witnesses

12   had testified . . ." (*Id.*)

13        In denying post-conviction relief, the Arizona Court of Appeals reasoned that the

14   admissibility of the victim's pretrial recorded interviews was "precluded because it was

15   adjudicated on the merits on direct appeal." *State v. Vitasek*, No. 1-CA-CR 19-0419 PRPC,

16   2020 WL 949561, at *1 (Ariz. Ct. App. Feb. 27, 2020). The Arizona Court of Appeals

17   further held that it would not consider Vitasek's argument "that trial counsel was rendered

18   ineffective when the trial court changed its ruling on the pretrial recordings because his

19   petition for review [did] not develop his argument and [skipped] from page 18 to 21." *Id.*

20   An Arizona Court of Appeals staff member later emailed Vitasek's advisory counsel to

21   alert them that the missing pages had been found and had been unintentionally omitted

22   when the document was originally scanned. Vitasek then filed a motion for reconsideration

23   reasserting the claims discussed above. (Doc. 1-5 at 35-37.) Thereafter, the Arizona Court

24   of Appeals reviewed the full post-conviction review petition and denied his motion to

25   reconsider. (Doc. 1-5 at 53-54.)

26        Vitasek objects to the R&R's conclusion that the Arizona Court of Appeals

27   "ultimately reviewed the issue when it denied the motion to reconsider." (Doc. 61 at 16.)

28   He argues that the Arizona Court of Appeals "denied to reconsider altogether" and that

"[n]o additional review was done." (*Id.* at 17.) But the Arizona Court of Appeals had previously denied post-conviction relief on Vitasek's arguments underlying Ground One in analyzing them on direct appeal. Assuming the Arizona Court of Appeals did not initially review the allegation that the "trial court changed its ruling on the pretrial recordings," the court did review that issue in denying Vitasek's motion to reconsider. The denial of a motion to reconsider necessarily entails some consideration. Here, the Arizona Court of Appeals denied Vitasek's motion for reconsideration, "[a]fter consideration" of the materials submitted to the court. (Doc. 1-5 at 53-54.) For these reasons, Vitasek's contentions that the Arizona Court of Appeals never reviewed this claim is without merit.

Vitasek objects to the R&R's finding that the Arizona Court of Appeals reviewed the merits of, and rejected, the various formulations of his claims that the trial court erred by assuring his counsel that recorded victim interviews would never be admitted for substantive purposes. (Doc. 61 at 17-18.) Vitasek states that he "searched the Court of Appeals' rulings and nowhere does the ruling confirm this conclusion." (*Id.* at 18.) But as previously explored, the Arizona Court of Appeals analyzed and rejected Vitasek's Ground One arguments in a 2017 ruling. *Vitasek*, 2017 WL 525963, at *8-9. Therefore, Vitasek was not "denied access to the Arizona courts" and his Ground Two objections to the R&R are overruled.

### C.   Ground Three

In Ground Three of his Petition, Vitasek again argues that he "was denied his 6th Amendment right to confront the witnesses when the trial court judge changed his ruling from the prosecutor's inability to use hearsay recordings to prove the truth of the matter to her ability to do so after all witnesses had testified [and been excused]." (Doc. 1 at 18.) Here, however, Vitasek advances two additional arguments. First, he maintains that "because there was no notice of intent to use the recordings to prove the truth of the matter or no ruling from the court, [he] was denied his 6th Amendment right to effective assistance and his 6th Amendment right to confront witnesses." (*Id.* at 20.) Second, Vitasek also argues that the "court failed to provide [his] counsel with an opportunity to recross the

witness on the new material located within the interviews now being provided to the jury as evidence to prove the truth of the matter." (*Id.* at 19.)

Vitasek objects to the R&R's finding that his notice argument is procedurally defaulted. (Doc. 61 at 18.) Vitasek argues that the "notice issue was raised on direct appeal in a petition for review." (*Id.*) Regardless, the R&R alternatively reasons that, unlike some other rules of evidence, Arizona Rule of Evidence 803(5) does not require prior notice to an opposing party prior to the admission of certain statements. *Compare* Fed. R. Civ. P. 807(b) (providing that a proponent of a statement admitted under the residual hearsay exception must provide "an adverse party reasonable notice of the intent to offer the statement . . . in writing before the trial or hearing") *with* Fed. R. Evid. 803(5) (providing no such requirement for the admission of recorded recollections).[1] Thus, Vitasek's argument that the Magistrate Judge "misapplie[d] the Rule 807 notice requirement" is unfounded. The notice provision of Arizona Rule of Evidence 807 applies to statements admitted under that rule, not those admitted under Rules 803 or 804.

Vitasek generally objects to the R&R's conclusion that his second additional argument—that the trial court failed to provide his counsel with an opportunity to recross the victim witnesses—was not fairly presented in the state courts and therefore procedurally barred. Without any citation to the record, Vitasek summarily claims that "[e]ven though this issue was not directly worded as 'recross' the argument was fairly presented." (Doc. 61 at 22.) This general objection is insufficient to trigger the Court's de novo review of the R&R. And, as explained above, Vitasek failed to cite to any portion of the record where the trial court prevented him from recalling the victim witnesses either during the State's case or calling them in his case-in-chief. Therefore, Vitasek's objections to the R&R's treatment of Ground Three are overruled.

### D.  Ground Four

In Ground Four of his Petition, Vitasek asserts a violation of "the 14th Amendment right to due process and a 6th Amendment Confrontation Clause violation" because "the

---

[1] The analogous Arizona Rules of Evidence contain identical language to the Federal Rules of Evidence.

hearsay recorded evidence the Court allowed the prosecutor to use to prove the truth of the matter failed to meet Arizona Rule of Evidence 803(5)'s requirements." (Doc. 1-1 at 1-3.)

Vitasek generally objects to the R&R's finding that Arizona Rule of Evidence 803(5) does not require a court to conduct a trustworthiness hearing. (Doc. 61 at 24.) Vitasek argues that because he is acting pro se, he is not required to cite legal authority to support his claims. (*Id.*) This is not so. Vitasek's citation to justify his lack of authority, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), does not stand for the proposition that pro se litigants are excused from providing legal authority for their claims.[2] Nevertheless, even if the trial court failed to follow Arizona Rule of Evidence 803(5)'s requirements, which it did not, the "failure to comply with the state's rules of evidence is neither a necessary nor sufficient basis for granting habeas relief." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). And a "state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process." *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999).

Vitasek also objects to the Magistrate Judge's "failure to analyze the hearsay statements de novo to determine if the hearsay met the trustworthy requirements to avoid violating the Confrontation Clause." (*Id.* at 25.) As discussed in Ground One, the Magistrate Judge incorporated the Arizona Court of Appeals finding that the victims "were able to testify to the offenses in part, they indicated that they could not remember everything, that they remembered better at the time of the pretrial interviews, and that they had been truthful during the interviews." *Vitasek*, 2017 WL 525963, at *8. And the Magistrate Judge correctly stated that 803(5) does not require a court to conduct a "trustworthiness hearing." (Doc. 42 at 18.) The admission of these recorded recollections as substantive evidence was not an unreasonable application of or clearly contrary to federal law.

Vitasek next objects to the Magistrate Judge's "denial based on a requirement that [he] failed to cite federal authority that the hearsay violated due process . . . ." (Doc. 61 at

---

[2] The portion of *Erickson* to which Vitasek cites refers only to the liberal pleading standards of a 42 U.S.C. § 1983 claim.

26.) Vitasek claims that the law mandates that he "is not required to do so." (*Id.* at 27.) Again, Vitasek's cited authority does not stand for that proposition. The R&R correctly found that Vitasek failed to identify any clearly established United States Supreme Court law holding that the admission of victim hearsay statements violates due process where those victims testify at trial. *See, e.g.*, *Zapien v. Martel*, 849 F.3d 787, 794 (9th Cir. 2015) (reasoning that because "there is no Supreme Court case establishing the fundamental unfairness of admitting multiple hearsay testimony," petitioner's claim was barred on federal habeas review); *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (holding that AEDPA bars courts from granting habeas relief for a claim premised on the erroneous admission of evidence because the United States Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ").

Vitasek also objects to the R&R's finding that he failed to establish that the admission of the recordings was so fundamentally unfair as to violate due process. He asserts that "the record clearly shows the hearsay evidence used to obtain the conviction was so fundamentally unfair as to violate due process" because it was "unreliable, untrustworthy, coerced, redacted to cover up the taint, and the hearsay failed to meet the Rule 803(5) requirements." (Doc. 61 at 27.) Vitasek cites to nothing in the record to support his claims and again fails to establish that the state court's finding that the evidence met Arizona Rule 803(5)'s admissibility requirements was clearly contrary to or an unreasonable application of federal law.

Lastly, Vitasek objects to the R&R's conclusion that he could confront the victim witnesses at trial. (*Id.* at 28-29.) But, as previously explored, the witnesses testified at trial and there was nothing precluding Vitasek from cross-examining the witnesses after recalling them in the state's case or calling them in his case-in-chief. The "Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California v. Green*, 399 U.S. 149, 158 (1970). Therefore, Vitasek's objections to the

R&R's findings in Ground Four are overruled.

**E.    Ground Five**

In Ground Five of his Petition, Vitasek alleges he was "denied a 14th Amendment right to Due Process and a 6th Amendment right to effective assistance" because the trial court failed to hold a hearing regarding the victim's "chastity" under A.R.S § 13-1421(A), Arizona's rape-shield statute. (Doc. 1-1 at 5.) As neither party objects to the background section of Ground Five contained in the R&R, the Court accepts and adopts it.

Vitasek objects to the R&R's conclusion that the trial court held two hearings on the issue because "a state court hearing must be based on EVIDENCE, which the court did not have," and he further asserts that the October 7, 2010 hearing was not an evidentiary hearing. (Doc. 61 at 29-30.) The record reflects otherwise. On October 7, 2010, Judge Stephens held oral argument on Vitasek's motion to question the victims on their prior sexual activity and to introduce evidence of the same. (Doc. 10-6 at 16.) The court denied the motion after hearing argument. (*Id.* at 19.) During trial, on September 26, 2011, the trial court again held argument on Vitasek's request. (*Id.* at 73-74.) The trial court denied the request by written ruling the next day. (*Id.* at 86.) Vitasek cites nothing in the record to demonstrate this hearing was not based on "evidence."

Even if these could not be characterized as evidentiary hearings, Vitasek cites to no authority that an evidentiary hearing was legally required to exclude the evidence.[3] Rather, as the R&R provides, neither Arizona law nor federal law requires an evidentiary hearing prior to the exclusion of evidence under the respective rape-shield statutes. *See State v. Grove*, No. 2 CA-CR 2007-0021, 2007 WL 5582237, at *5 (Ariz. Ct. App. Oct. 31, 2007) ("Section 13-1421(B) does not require an evidentiary hearing prior to the *exclusion* of evidence.") (emphasis added); Fed. R. Evid. 412(c)(2) (requiring a hearing prior to the *admission* of such evidence but providing no requirement for the exclusion of the same)

---

[3] Vitasek cites *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) for the proposition that "it is an 'unreasonable determination of the facts' when the state court precludes relevant evidence without conducting an evidentiary hearing." (Doc. 61 at 32.) But that portion of the opinion says nothing of evidentiary hearings let alone whether excluding evidence under a rape-shield statute requires one.

(emphasis added). Therefore, Vitasek's objections to the R&R's treatment of Ground Five are overruled.

### F.    Ground Six

In Ground Six of his Petition, Vitasek argues that his Sixth and Fourteenth Amendment rights were violated when "the trial court judge precluded relevant unchastity evidence of the State's witnesses." (Doc. 1-1 at 11.) Vitasek objects to the Magistrate Judge's conclusion that a "fairminded jurist could have found that the exclusion of the victims' other acts pursuant to A.R.S. § 13-1421 did not deprive [Vitasek] of an opportunity to present a meaningful defense." (Doc. 42 at 26; Doc. 61 at 33.) Vitasek contends that the state court's decision to preclude the relevant chastity evidence was unreasonable because it only considered the "one sided redacted version submitted by the state" and he reasons that a jurist cannot "be fairminded by analyzing a limited review of the evidence." (Doc. 61-1 at 1.) The record, however, demonstrates that the trial court independently reviewed the "evidence regarding the sexual activities of some of the alleged victims" and "reviewed portions of the transcripts containing the police interviews [of the victims] as requested by [Vitasek]." (Doc. 10-6 at 86.) And as articulated above, the state court conducted two separate hearings to determine the admissibility of this evidence.

Vitasek has not established that the state court ruling was contrary to or an unreasonable application of federal law. Indeed, "[s]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence in criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). Moreover, the Supreme Court has recognized the legitimate interests served through rape shield statutes in "protect[ing] victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior." *Michigan v. Lucas*, 500 U.S. 145, 146 (1991); *see also Anderson v. Morrow*, 371 F.3d 1027, 1030 (9th Cir. 2004) ("A state passing a rape shield law makes a valid legislative determination that rape victims deserve heightened protections against surprise, harassment, and unnecessary invasions of privacy.") (internal marks and citation omitted). And Vitasek has also failed to point to anything in the record

that the state court's decision was an unreasonable determination of the facts.

Vitasek next objects to the Magistrate Judge "failing to ORDER, obtain, and review the interrogations of the children and the redactions from those interrogations before determining if the jury could be fairminded on a redacted review of the interrogations[.]" (Doc. 61-1 at 1.) The R&R, however, notes that Vitasek "does not describe the specific evidence the court should have admitted." (Doc. 42 at 25, n.15.) Nonetheless, the Magistrate Judge combed through the record to find examples of the factual allegations contained in the petition for review and trial transcripts. (*Id.*) Vitasek asserts that, "besides the listed documents in footnote 15 [of the R&R,]" a description of this evidence can also be found in his "appeal brief." (Doc. 61-1 at 1.) Not only does this contention admit that the Magistrate Judge correctly listed examples of the relevant evidence, the portion of appellate briefing to which Vitasek cites does not provide a description of the "chastity" evidence. (Doc. 17-1 at 1-20.) Indeed, in this portion of his briefing, Vitasek describes how one of the victims testified about other sexual acts, belying any argument that such evidence was precluded. (*Id.* at 18 ("During trial CK testifies . . . he was only masturbating with his brother . . . [and that] he saw [Vitasek] naked once or twice.").)

To the extent Vitasek makes any specific objection to the R&R regarding the state court's supposed failure to conduct an evidentiary hearing and to "allow [his] counsel to submit this evidence pre-trial so he could properly prepare for the trial and cross examination" (Doc. 61-1 at 2), such objection is overruled for the same reasons discussed in Ground Five.

Vitasek's next objection is "to his inability to show the jury these portions of the interrogations and his inability to cross-examine the boys on their sex crimes which showed a motive to falsely accuse." (Doc. 61-1 at 2.) This is not a specific objection to any finding in the R&R and "[s]imply repeating arguments made in the petition is not a proper objection under Rule 72." *Curtis v. Shinn*, No. CV-19-04374-PHX-DGC, 2021 WL 4596465, at *7 (D. Ariz. Oct. 6, 2021); *see also Powell v. Ryan*, No. CV-11-00271-TUC-FRZ, 2014 WL 4053446, at *14 (D. Ariz. Aug. 14, 2014) ("Where, as here, Petitioner fails

1    to offer sufficient evidence of his motive-to-fabricate theory, it is not an unreasonable

2    application of Supreme Court precedent to hold that sexual history impeachment evidence

3    is not admissible.").

4          The R&R finds that "the trial court did not preclude questioning regarding threats

5    and interrogation techniques that were used by detectives when interviewing/questioning

6    the victims." (Doc. 42 at 27.) Vitasek objects to this finding, claiming that it is "an

7    unreasonable determination of the facts." (Doc. 61-1 at 3.) But the record shows that the

8    trial judge allowed Vitasek's counsel to question detectives about whether they threatened

9    or otherwise coerced victims in their interviews. (Doc. 30-6 at 110-11, Doc. 30-10 at 77.)

10    Vitasek's trial counsel questioned at least one detective about their interrogation techniques

11    and cross-examined a detective about the precise language used in the interrogation. (*Id.*)

12    Moreover, the record demonstrates that Vitasek's trial counsel was able to question the

13    victims themselves about the interviews. (Doc. 30-6 at 110.)

14          Vitasek finally objects to the R&R's conclusion that his trial counsel "was not

15    unreasonable for failure to ensure the chastity hearing was conducted prior to trial." (Doc.

16    61-1 at 4.) The R&R found that Vitasek's claim here fails the first prong of *Strickland v.*

17    *Washington*, 466 U.S. 668 (1984) because he has failed to demonstrate that his "counsel's

18    conduct was objectively unreasonable." (Doc. 42 at 28-29.) Vitasek argues that

19    "[p]roceeding to trial with a chastity motion still pending on the defendant's primary

20    evidence falls well below professional standards[.]" (Doc. 61-1 at 4.) This claim is based

21    on the faulty premise that the state court did not hold a hearing on the matter of the

22    admissibility of the victims' prior sexual acts. As explored above, the state court held

23    argument on this issue twice, once in October of 2010 and another during trial in September

24    of 2011. (Doc. 10-6 at 3, 86.) And the record demonstrates that Vitasek's counsel

25    repeatedly argued for the admission of this evidence at trial. (Doc. 30-9 at 184-86, 48-49,

26    66-75.) Moreover, Vitasek has failed to establish that the Arizona Court of Appeals

27    decision on this issue was contrary to or an unreasonable application of federal law. *See*

28    *Hardy v. Chappell*, 849 F.3d 803, 825 (9th Cir. 2016) (reasoning that federal habeas review

of a state court ruling on a *Strickland* claim is subject to "double deference" because "the federal court asks whether it was reasonable for the state court to find whether trial counsel's performance fell within the range of reasonable professional assistance"). Vitasek cites nothing that indicates otherwise. Therefore, Vitasek's objections to the R&R's findings in Ground Six are overruled.[4]

## G. Ground Seven

In Ground Seven of his Petition, Vitasek argues he was denied due process under the Fourteenth Amendment "because the prosecutor failed to prove every element of the charged crimes beyond a reasonable doubt." (Doc. 1-1 at 16.) The R&R finds that Vitasek is not entitled to relief on Ground Seven because "it is premised solely on the alleged inadmissibility of evidence under Ariz. R. Evid. 803(5)." (Doc. 42 at 31.) Vitasek generally objects to this conclusion and argues that this is "an unreasonable determination of the facts." (Doc. 61-1 at 6.) The R&R explains that Vitasek does not dispute that the evidence was sufficient for his conviction if the Rule 803(5) evidence is included in the sufficiency analysis. (Doc. 42 at 31.) In his lengthy analysis of the issue, Vitasek merely reiterates his arguments relating to the admissibility of the evidence under Arizona Rule of Evidence 803(5). (*Id.* at 6-13.) For the same reasons as explained in Grounds One and Three above, Vitasek has failed to establish that the Arizona Court of Appeals ruling on this issue was clearly contrary to or an unreasonable application of federal law. And Vitasek does not object to the R&R's finding that the evidence before the jury, including the "victims' recorded interviews during which the victims stated that [Vitasek] had sexually abused them[,] . . . was sufficient for [the jury] to find [Vitasek] guilty as charged beyond a reasonable doubt." (Doc. 42 at 31.) Therefore, Vitasek's objections to the R&R's findings in Ground Seven are overruled.

## H. Ground Eight

In Ground Eight of his Petition, Vitasek argues that the trial court violated his due

---

[4] In analyzing Ground Six, the R&R also analyzes and rejects Vitasek's arguments concerning the evidence of prescription drug use of his victims. (Doc. 42 at 30.) Neither side has objected to this section, and the Court accepts and adopts it.

process, compulsory process, and Confrontation Clause rights by allowing the State to redact certain portions of the recordings of the victims' police interviews before presenting them to the jury. (Doc. 1-2 at 5.) The R&R finds that Vitasek "largely repeats his claims that the court improperly excluded, under A.R.S. § 13-1421, other act evidence concerning the victims" and that the redaction of the precluded evidence from the recordings "rendered his counsel ineffective because his counsel was precluded from showing evidence of the 'improper questioning technique[s]'; cross-examining the victims on the redacted portions that showed they had 'a motive to lie'; and obtaining expert testimony on the redacted portions." (Doc. 42 at 32.) The R&R concludes that "[b]ecause [Vitasek] is not entitled to relief on the merits of the Arizona Court of Appeals decision [on this issue], he is not entitled to relief on the same claim arguing the redactions were improper." (*Id.*) Vitasek responds that "[t]his has to be the most unreasonable determination of the facts ever placed upon this court." (Doc. 61-1 at 14.) But nowhere in his objection does Vitasek specifically address any of the R&R's findings. Therefore, the Court has no obligation to conduct a de novo review of this portion of the R&R and hereby adopts it. Vitasek's general objections to the R&R's analysis of Ground Eight are overruled.

## I.      Ground Nine

In Ground Nine of his Petition, Vitasek argues that his due process rights to a fair trial were violated due to alleged prosecutorial misconduct consisting of: (i) presentation of "false rulings" to the trial judge; (ii) "manipulati[on]" of witness testimony; (iii) *Miranda* violations; (iv) "use of unauthenticated documents"; (v) "perjury to the grand jury"; (vi) "improper use of recordings and improper redactions"; (vii) "prosecutor testified during trial"; (viii) "improper closing statement remarks"; (ix) "discovery violations"; and (x) "concealment and deception." (Doc. 1-2 at 10-24.) The R&R addressed each of these in turn.

### i.      Presentation of False Rulings

As to the presentation of false rulings claim, the Magistrate Judge found that Vitasek was "not entitled to relief because the court of appeals' decision is consistent with clearly

1   established federal law and a reasonable determination of the facts." (Doc. 42 at 35.)

2   Moreover, the R&R provides that there "is no factual basis for [Vitasek's] claim that 'false

3   rulings' created by the state prevented the presentation of evidence of the victims' prior

4   sexual acts." (*Id.*) Vitasek does not object to these findings. Accordingly, the Court adopts

5   this portion of the R&R.

### ii.    Manipulation of Witness Testimony

7   The R&R provides that Vitasek also failed to make the "requisite showing on any

8   of his [manipulation of witness testimony] claims." (*Id.* at 36.) The Magistrate Judge

9   reasoned that Vitasek failed to "show that the challenged testimony is actually false" and

10  that he did "not proffer any evidence to support his claim that the prosecutor provided

11  immunity to the witnesses in exchange for 'staged' testimony, resting it on mere

12  speculation that is insufficient." (*Id.* at 36-37.) Vitasek generally objects to the Magistrate

13  Judge's findings by stating that they are "an unreasonable determination of the facts." (Doc.

14  61-1 at 18.) To the extent that Vitasek makes any specific objection to a finding in the

15  R&R, he offers only conclusory and disjointed allegations in support thereof. (*Id.*) Thus,

16  Vitasek's objections to the R&R's analysis of his manipulation of witness testimony claim

17  are overruled.

### iii.    *Miranda* Violations

19  The R&R next finds that Vitasek's *Miranda* violation claims were not properly

20  exhausted and therefore impliedly procedurally defaulted. (Doc. 42 at 38.) Namely, the

21  R&R finds that Vitasek failed to present these claims "to the Arizona Court of Appeals in

22  his direct appeal or in his petition for review" and that he would be barred "from asserting

23  them in state court now." (*Id.* (citing Ariz. R. Crim. 32.2(a)(3)).) The R&R further finds

24  that Vitasek failed to show cause, prejudice, or a fundamental miscarriage of justice to

25  excuse his procedural default. (*Id.*) Vitasek objects and states that this claim was "raised

26  during appeal" because the "9th Circuit Court of Appeals has held that claims are exhausted

27  when the Appellant cites federal case law." (Doc. 61-1 at 17.) But this is not the legal

28  standard for exhaustion of state remedies. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

1    (explaining the requirement that a state prisoner must exhaust available state remedies

2    before seeking a federal writ of habeas corpus); *see also* 28 U.S.C. § 2254(b)(1). Vitasek

3    further argues that this issue was raised in his "petition for review." (Doc. 61-1 at 17.) But

4    the exhibit he cites to is his petition for review to the Arizona Supreme Court, not the

5    Arizona Court of Appeals. And a claim is not properly exhausted by raising it for the first

6    time at the Arizona Supreme Court. *See Baldwin*, 541 U.S. at 29 ("To provide the State

7    with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each

8    *appropriate* state court.") (citations omitted) (emphasis added); *see also Castille*, 489 U.S.

9    at 351 ("The Court of Appeals below held, and respondent contends here, that the

10   submission of a new claim to a State's highest court on discretionary review constitutes

11   fair presentation. We disagree."). Vitasek does not object to the R&R's finding that he

12   failed to overcome his procedural default by showing cause, prejudice, or a fundamental

13   miscarriage of justice. Therefore, Vitasek's objections to the R&R's analysis of his

14   *Miranda* violation claim are overruled and this portion of the R&R is adopted.

15                      **iv.    Use of Unauthenticated Documents**

16             As to Vitasek's claims relating to the use of unauthenticated documents, the R&R

17   concludes that the portion of this claim "premised on the state's use of 'internet postings'

18   is unexhausted because [Vitasek] did not present this claim to the Arizona Court of Appeals

19   in his direct appeal or in his petition for review." (Doc. 42 at 39.) Therefore, the R&R finds

20   this portion of the claim procedurally defaulted and unexcused because Vitasek failed to

21   show cause and prejudice or a fundamental miscarriage of justice. (*Id.*) Vitasek objects to

22   the R&R's finding of a procedural default for the same reasons he objected to the R&R's

23   analysis of his *Miranda* violation claim. (Doc. 61-1 at 17-18.) Thus, for the same reasons,

24   the Court overrules Vitasek's objection to the R&R's finding that the "internet posting"

25   portion of his unauthenticated documents claim is procedurally defaulted. The R&R,

26   however, did find that the portion of Vitasek's unauthenticated documents claim relating

27   to the "hearsay police reports" was properly exhausted. (Doc. 42 at 39.) But the R&R states

28   that Vitasek provides "no factual basis" for his claim here and describes this portion as

"plainly meritless." (*Id.* at 40.) These findings are unobjected to and are accordingly adopted.

### v.        Perjury to the Grand Jury

The R&R finds that Vitasek's "perjury to the grand jury" claim is meritless because "any error, including constitutional error, occurring at the grand jury proceeding was rendered harmless because [Vitasek] was found guilty as charged by a petit jury." (*Id.* at 40.) This portion of the R&R is unobjected to. Accordingly, the Court adopts the R&R's findings as to Vitasek's "perjury to the grand jury" claim.

### vi.        Improper Use of Recordings and Improper Redactions

The R&R next finds that his "improper use of recordings and improper redactions" claim merely reiterates his Grounds 2-6. (*Id.* at 41.) Therefore, the R&R finds that Vitasek is not entitled to relief for the same reasons as articulated in those Grounds. Vitasek does not assert any objection to this portion of the R&R and the Court hereby adopts it.

### vii.        Prosecutor Testified During Trial

In Vitasek's next Ground Nine subclaim, he asserts that the prosecutor "testified" and "vouched" for the victims during trial. (Doc. 1-2 at 15.) The R&R finds that "nowhere among [Vitasek's] numerous allegations of misconduct on appeal did he present one specifically premised on improper prosecutorial testimony or witness-vouching." (Doc. 42 at 41.) Therefore, the R&R concludes that this subclaim is unexhausted and procedurally defaulted. (*Id.*) Vitasek repeats the same general objections to the R&R's finding that this claim is procedurally defaulted. The Court overrules these objections for the same reasons as found above. Vitasek further argues the merits of this claim but fails to establish cause and prejudice or a fundamental miscarriage of justice excusing his procedural default. (Doc. 61-1 at 18-19.) Having determined this claim to be procedurally defaulted, the R&R does not analyze the merits of this underlying claim. Therefore, Vitasek's argument here does not form a valid objection to any specific finding the in the R&R. For these reasons, the Court adopts this portion of the R&R.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### viii.   Improper Remarks During Closing Argument

The R&R next finds that Vitasek's claims that the prosecutor's statements during closing argument were "improper" were "not raised before the Arizona Court of Appeals and are procedurally defaulted without excuse." (Doc. 42 at 42.) Again, Vitasek's general objections to the R&R's procedural default finding are overruled for the same reasons articulated above in analyzing Vitasek's *Miranda* violation claims.

### ix.   Discovery Violations

In his discovery violation subclaim, Vitasek asserts that "during pretrial proceedings the prosecutor did everything within her power to thwart [his] access to information he needed to investigate why these boys made these false sex abuse claims" and that "[a]bsolutely nothing was provided [to him] unless there was an order from the court." (Doc. 1-2 at 17.) The R&R finds that Vitasek is not entitled to relief on these claims because the Arizona Court of Appeals' "rejection of them was not unreasonable or contrary to clearly established federal law." (Doc 42 at 44.) This section of the R&R is entirely unobjected to and is accordingly adopted by the Court.

### x.   Concealment and Deception

In his final subsection of Ground Nine, Vitasek claims that the prosecutor "deceived the court into not viewing the recorded interviews to make its Rule 404(c) ruling so she could conceal the manipulation by the police." (Doc. 1-2 at 20.) The R&R concludes that Vitasek is not entitled to relief on this claim because the Arizona Court of Appeals reasonably rejected it and there is no factual merit to his claim. (Doc. 42 at 45.) Vitasek does not object to this portion of the R&R and the Court therefore adopts it.

### xi.   Miscellaneous Objections

Vitasek generally objects to the R&R's separate consideration of each above claim of prosecutorial misconduct. (Doc. 61-1 at 19.) He argues that analyzing each misconduct claim separately is an "unreasonable determination of the facts" and that he "raised the enormous prosecutorial misconduct' to show the 'cumulative effect.'" (*Id.*) To the extent that this argument serves as a specific objection to any specific finding in the R&R, the

Court finds no error with the R&R's analysis. Because the R&R finds that all of the above prosecutorial misconduct claims are without merit, there is no need to consider the claims cumulatively. Vitasek's general objections to the R&R's separate consideration of each claim of prosecutorial misconduct is overruled.

### J.      Ground Ten

In Ground Ten of his Petition, Vitasek argues that he "was denied his [Fifth] Amendment right under the Grand Jury Clause to be tried on charges presented within the indictment." (Doc. 1-3 at 2-6.) The R&R recommends the dismissal of this claim on the grounds that it is not cognizable. (Doc. 42 at 45.) Specifically, the R&R correctly points out that there is "no due process right to a grand jury indictment before criminal prosecution in state court." *Peterson v. California*, 604 F.3d 1166, 1170 (9th Cir. 2010) (citing *Hurtado v. California*, 110 U.S. 516, 534-35 (1884)). Vitasek objects "to the magistrates [sic] conclusion that a variance between the indictment and jury instruction which produced a constructive amendment in violation of the [Fifth] Amendment Grand Jury Clause is not a cognizable claim." (Doc. 61-1 at 23.) Vitasek argues that "ALL Constitutional claims" are "cognizable on habeas review." (*Id.* at 22.) But Vitasek neither objects to any of the R&R's reasoning nor provides any authority to the contrary. Accordingly, his objections to the R&R's analysis of Ground Ten are overruled.

### K.      Ground Eleven

In Ground Eleven of his Petition, Vitasek argues that the trial court's exclusion of his expert witness due to untimely disclosure violated his rights to due process and compulsory process under the Fourteenth and Sixth Amendments. (Doc. 42 at 46.) The R&R concludes that Vitasek is not entitled to relief here because these claims are procedurally defaulted. (*Id.*) Vitasek objects to this finding, arguing that "the record clearly shows otherwise." (Doc. 61-1 at 24.)

Vitasek does not take issue with the R&R's determination that his claim that the trial court abused its discretion in precluding his expert's testimony due to late disclosure was not raised until January 6, 2014 in an unauthorized and tardy second addendum to his

supplemental brief to the Arizona Court of Appeals. (*Id.* at 23.) Instead, Vitasek asserts that this claim was exhausted because it was "still filed" and, "[b]ecause an *Anders* brief was filed, the Court of Appeals had a responsibility to review 'all issues' with merit including the violation of compulsory process raised within the addendum regardless of when [he] filed [it]." (Doc. 61-1 at 23.) But Vitasek ignores that a request for an *Anders* review does not exhaust a claim. *See, e.g.*, *Reed v. Schriro*, 290 Fed. App'x. 982, 984 (9th Cir. 2008) (reasoning that the "fact that the Arizona Court of Appeals complied with [a Petitioner's] request to 'search the record for fundamental error' was not sufficient to exhaust the claim"); *Smiley v. Ryan*, No. CV-12-2525-PHX-FJM, 2014 WL 7272474, at *13 (D. Ariz. Dec. 18, 2014) (finding that a petitioner's "claims were not exhausted simply by virtue of the review for error pursuant to *Anders*"). Vitasek further claims that the fact he raised this issue in his petition for review to the Arizona Supreme Court demonstrates that his claim is exhausted. This argument fails for the same reasons the Court overruled Vitasek's *Miranda* violation claims in Ground Nine. The R&R properly found this claim to be unexhausted and impliedly procedurally defaulted.

The R&R also concludes that Vitasek's "Sixth Amendment claim of Ground Eleven" was procedurally defaulted because it "was not raised in *any* filing before the Arizona Court of Appeals" let alone a late one. (Doc. 42 at 47 (emphasis in original).) Vitasek objects to this finding by arguing that he raised this claim "during PCR proceedings under ineffective assistance." (Doc. 61-1 at 23.) But the record reveals otherwise, and the portion of the record to which Vitasek cites does not support his assertion that he raised this claim in a PCR proceeding. (Doc. 10-4 at 10.)

In concluding that Vitasek's procedural default is unexcused, the R&R finds that Vitasek failed to show cause and prejudice or a fundamental miscarriage of justice for either claim in Ground Eleven. Vitasek fails to object on these grounds or establish otherwise. Accordingly, Vitasek's objections to the R&R's analysis of Ground Eleven are overruled.

1     **L.     Ground Twelve**

2          In his Petition's final claim for relief, Vitasek argues that his appellate counsel

3     rendered ineffective assistance by filing an *Anders* brief "when numerous meritorious

4     appellate issues existed," and that he was denied due process because the state court "failed

5     to appoint new counsel to represent [him] on these meritorious issues." (Doc. 1-3 at 11.)

6     The R&R concludes that Vitasek is "not entitled to relief on his ineffectiveness claim

7     because he fails to show that the Arizona Court of Appeals' rejection of it was

8     unreasonable." (Doc. 42 at 48.) Moreover, the R&R finds that the "due process claim of

9     Ground Twelve is procedurally defaulted." (*Id.* at 49.) Vitasek objects on the grounds that

10    "clearly established federal law mandates that it is inappropriate when evaluating

11    ineffective assistance to apply the prejudice standards of *Strickland* or the harmless error

12    analysis of *Chapman* because such application would render the protections afforded by

13    *Anders* meaningless." (Doc. 61-1 at 25.) He further argues that "it is a violation of clearly

14    established federal law and unreasonable for the Court of Appeals to require the petitioner

15    to show prejudice and for the Magistrate to agree with the Court on this requirement." (*Id.*)

16         Vitasek has failed to show that the Arizona Court of Appeal's rejection of his

17    ineffectiveness claim was contrary to or an unreasonable application of federal law. Despite

18    claiming that "numerous meritorious appellate issues existed," Vitasek fails to identify any.

19    As explored above, Vitasek has not established that any appellate claim he identified and

20    raised on appeal had merit. And appellate counsel's decision to not present meritless claims

21    was neither prejudicial nor deficient. *See Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir.

22    2012) (finding that it is "obvious that the failure of an attorney to raise a meritless claim is

23    not prejudicial"); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (explaining that "the

24    failure to take futile action can never be deficient performance"). Vitasek also argues that

25    he cannot be required to establish ineffective assistance of counsel under *Strickland*

26    because "[i]t is not possible for an inexperienced pro per defendant to show the court

27    evidence of what an experienced attorney would have submitted . . . ." (Doc. 61-1 at 25.)

28    But Vitasek cites no authority for this proposition. For these reasons, Vitasek's objections

to the R&R's analysis of Ground Twelve are overruled.

The R&R also found that the due process portion of Vitasek's Ground Twelve was procedurally defaulted because he did not present this claim to the Arizona Court of Appeals in his direct appeal or in his petition for review. (Doc. 42 at 49.) This portion of the R&R is unobjected to and the Court accepts and adopts it.

### M.     Motion for Discovery[5]

Vitasek filed a Motion for Discovery of records from Child Protective Services. (Doc. 9). Vitasek states that, on February 3, 2011, he filed a Motion for Discovery to "obtain the CPS records for the children of Julian and Fred Moore" to "substantiate arguments within [Vitasek's] motion for chastity." (*Id.* at 1.) In his instant Motion for Discovery, Vitasek requests that the Court "order the [Attorney General's] Office to turn over these CPS records so this Court can conduct its own inspection" and disclose these records to him. The R&R recommends that Vitasek's Motion be denied. (Doc. 42 at 50.)

Vitasek generally objects on the grounds that the CPS records were ordered to be disclosed by the trial court. (Doc. 61-1 at 27.) The R&R notes as much, stating that "the trial court ordered the disclosure of CPS records . . . [and that it] appears undisputed the CPS records were not disclosed to any party." (Doc. 42 at 50.) As the R&R finds, however, Vitasek "did not raise an issue regarding CPS records on direct appeal" and, on post-conviction relief review, "the trial court denied relief regarding CPS records finding '[t]here is no evidence that the undisclosed CPS records say what [Vitasek] believes they say.'" (*Id.*) Thereafter, the Arizona Court of Appeals also found that the trial court did not abuse its discretion in denying Vitasek's motion for an in-camera inspection of CPS records. (Doc. 10-5 at 19.) Because the Arizona Court of Appeals ruled on the merits of Vitasek's claims regarding the victims' "chastity" and other act evidence, the R&R concludes that Vitasek's request to open discovery should be denied. (Doc. 42 at 51.) The

---

[5] The Court previously denied, without prejudice, Vitasek's Motion for Discovery (Doc. 9) and Motion for Evidentiary Hearing (Doc. 18). In so doing, the Court instructed Vitasek to file one pleading in which he could state all of his objections to the R&R, including its conclusions regarding his motions for discovery and for an evidentiary hearing. (Doc. 44 at 1-2.)

1    R&R explains that "review under § 2254(d)(1) is limited to the record that was before the

2    state court that adjudicated the claim on the merits." (*Id.* at 50-51 (quoting *Cullen v.*

3    *Pinholster*, 563 U.S. 170, 181-82 (2011).) The Court finds no issue with this reasoning.

4    *See Runningeagle*, 686 F.3d at 773-74 (denying a petitioner's request for discovery,

5    because the state courts denied his claim on its merits, thus limiting review under Section

6    2254(d)(1) to the record before the state courts).

7            Vitasek claims that these "records would show further reasons why the chastity

8    hearing [was] needed." (Doc. 61-1 at 27.) But as explored above, the trial court held

9    hearings on this question. And these records cannot change that conclusion. Thus, Vitasek

10   has failed to establish good cause for discovery of these records. *See Bracy v. Gramley*,

11   520 U.S. 899, 908-09 (1997) (finding that good cause exists "where specific allegations

12   before the court show reason to believe that the petitioner may, if the facts are fully

13   developed, be able to demonstrate that he is . . . entitled to relief"). As a result, Vitasek's

14   objections to the R&R's analysis of his Motion for Discovery are overruled.

15           **N.    Motion for Evidentiary Hearing**

16           Vitasek also filed a Motion for Evidentiary Hearing (Doc. 18). Vitasek argues that

17   the Court is required to conduct a hearing to resolve "factual disputes" between the parties.

18   (*Id.* at 1.) The R&R recommends that the Motion be denied because the "record is

19   sufficiently developed that an evidentiary hearing is unnecessary to resolve factual disputes

20   alleged by [Vitasek]." (Doc. 42 at 51.)  Vitasek does not make any specific objections to

21   the R&R on this point. To the extent that Vitasek's reiterations of his chastity hearing

22   claims form an objection to the R&R's finding that the record is sufficiently developed,

23   the Court is unpersuaded. As explained in Ground Six, the state courts did conduct a

24   hearing relating to the admissibility of the victim's other acts. The record continuously

25   refutes Vitasek's allegations and precludes habeas relief as analyzed above. Therefore, the

26   Court finds that an evidentiary hearing is unnecessary. *See Schriro v. Landrigan*, 550 U.S.

27   465, 474 (2007) (holding that "if the record refutes the applicant's factual allegations or

28   otherwise precludes habeas relief, a district court is not required to hold an evidentiary

hearing"). Vitasek's objections to the R&R's analysis of his Motion for Evidentiary Hearing are overruled.

### O.   Certificate of Appealability

The R&R recommends that a certificate of appealability be denied as to all of Vitasek's claims. (Doc. 42 at 53.) While the Magistrate Judge considered recommending a certificate as to Ground Six, the R&R ultimately finds that "it is beyond debate that [Vitasek] is not entitled to habeas relief on [Ground Six]." (*Id.*) Vitasek only generally objects to the Magistrate Judge's conclusion. (Doc. 61-1 at 32.) In his objection, Vitasek reiterates his arguments relating to Ground Six. (*Id.*) Vitasek then argues that the Court should "evaluate a procedural rule adopted by the Supreme Court in *Rogers v. Richmond*, 365 U.S. 534 (1961)." (*Id.*) This is not a specific objection to any finding in the R&R. The Court concurs with the reasoning set forth in the R&R regarding the issuance of a certificate of appealability. Fairminded jurists could not disagree that federal habeas relief is precluded as to Vitasek's Ground Six. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (holding that relief under AEDPA is warranted only where a state court's determination is "objectively unreasonable," rather than "incorrect or erroneous"); *McGill v. Shinn*, 16 F.4th 666, 703 (9th Cir. 2021) ("On AEDPA review, we may not grant relief unless the [state court's] application of federal law was flawed 'beyond any possibility for fairminded disagreement.'") (internal citation omitted). And Vitasek's claims do not make a substantial showing of the denial of a constitutional right. Therefore, Vitasek's objections to the R&R's recommendation that a certificate of appealability be denied are overruled.

## IV.   PENDING MOTIONS

Vitasek filed a Motion to Reconsider Denial to Obtain Trial Record pursuant to Federal Rule of Civil Procedure 59(e) (Doc. 64). The Court construes this filing as a Motion for Relief from Judgment or Order under Rule 60. Motions for reconsideration "are to be granted only in rare circumstances, and the Court 'will ordinarily deny' such a motion." *Don't Waste Arizona Inc. v. Hickman's Egg Ranch Inc.*, No. CV-16-03319-PHX-GMS, 2018 WL 11227682, at *1 (D. Ariz. May 4, 2018) (quoting LRCiv. 7.2(g)(1)). The Court

previously denied Vitasek's Motion for Record (Doc. 45) seeking an order directing Respondents to provide him a copy of a victim interview. (Doc. 60 at 2, 5.) Vitasek requests that "the Court take a closer look at the denial because the requested recordings (and transcripts of the recordings) are part of the 'trial record,' not discovery." (Doc. 64 at 1.) Vitasek does not make a showing of manifest error or a showing of new facts or legal authority that could not have been brought to the Court's attention earlier with reasonable diligence. *See* LRCiv. 7.2(g). Accordingly, Vitasek's Motion to Reconsider (Doc. 64) will be denied.

Vitasek also filed a Motion for Leave of Court to Amend Petition Pursuant to Rule 15(c)(1)(B) (Doc. 66). Vitasek seeks leave to amend his petition because he "discovered another structural error . . . ." (*Id.* at 2.) The Court previously reasoned that an amendment to Vitasek's Petition would not be "appropriate at this late juncture (months after the R & R issued)." (Doc. 60 at 5.) Vitasek filed his Motion for Leave to Amend 432 days after Respondents filed their response to the Petition and 125 days after the R&R was filed. (*See* Docs. 10, 42, 66.) Beyond being untimely, the Court finds that Vitasek's proposed amendment would be futile. *See Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) (finding that a district court need not grant leave to amend where the amendment would be futile). Vitasek's jury instruction argument here stems from his Ground 3 claims and, as explored before, the R&R correctly recommended that these claims be denied. The proposed amendment does not alter this conclusion. Therefore, the Court will deny Vitasek's Motion for Leave of Court to Amend Petition (Doc. 66).

Vitasek most recently filed a Motion to Strike Respondents' Response to his Objections to the R&R (Doc. 68). Vitasek asserts that Respondents' response to his objections to the R&R is untimely because it "took 90 plus days with no request for extention [sic]." (*Id.* at 2.) On April 6, 2022, Vitasek filed a motion for leave of court to file his oversized written objections to the R&R. (Doc. 51.) Approximately two months later, the Court, on June 22, 2022, granted Vitasek's request and directed the Clerk of Court to file Vitasek's oversized objections to the R&R. (Doc. 60 at 5.) Then, 14 days later, on

July 6, 2022, Respondents filed their response to those objections. (Doc. 65.) Vitasek asserts that this filing was untimely but the authority he cites in support thereof relates only to the timely filing of objections to the R&R, rather than a response to those objections. The Court finds that Respondents response to Vitasek's objections to the R&R was timely filed. Moreover, the Court finds Vitasek's sandbagging arguments to be patently meritless. As a result, the Court will deny Vitasek's Motion to Strike (Doc. 68).

**V.    CONCLUSION**

Accordingly, **IT IS ORDERED** as follows:

1.    The Report and Recommendation (Doc. 42) is **ACCEPTED** and the objections (Docs. 61, 61-1) are **OVERRULED**;

2.    Petitioner's Motion to Reconsider Denial to Obtain Trial Record (Doc. 64), Motion for Leave of Court to Amend (Doc. 66), and Motion to Strike (Doc 68) are **DENIED**;

3.    Petitioner's Petition (Docs. 1, 1-1, 1-2, 1-3) is **DENIED** and **DISMISSED WITH PREJUDICE** and the Clerk of Court shall enter judgment accordingly; and

4.    Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court **DENIES** issuance of a certificate of appealability because dismissal of the petition is partly based on a plain procedural bar and jurists of reason would not find this Court's procedural ruling debatable, *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000), and Petitioner has not made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2).

Dated this 13th day of March, 2023.

Michael T. Liburdi
United States District Judge